**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| IN RE:<br><br>SKY GARDENS RESIDENCES, LLC, a Florida limited liability company,<br><br>    Debtor. | CASE NO. 25-11136-LMI<br><br>CHAPTER 11 |
| SKY GARDENS RESIDENCES, LLC, a Florida limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>SAFE HARBOR EQUITY, LLC, a Florida limited liability company, and SAFE HARBOR EQUITY DISTRESSED DEBT FUND 3, L.P., a Delaware limited partnership,<br><br>    Defendants. | ADV. NO. |

**VERIFIED ADVERSARY COMPLAINT TO EXTEND**
**FOR INJUNCTIVE RELIEF OR, IN THE ALTERMATIVE,**
**TO EXTEND THE AUTOMATIC STAY**

SKY GARDENS RESIDENCES, LLC, a Florida limited liability company (the "Debtor" or "Plaintiff"), files this adversary complaint (the "Complaint") against SAFE HARBOR EQUITY, LLC ("Safe Harbor") and SAFE HARBOR EQUITY DISTRESSED DEBT FUND 3, L.P. ("Safe Harbor LP" and, together with Safe Harbor, the "Defendants"), and states as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

3. The statutory predicates for the relief requested in this Complaint are Bankruptcy Code §§ 105(a), 362(a) and Rule 7065 of the Federal Rules of Bankruptcy Procedure.

**THE PARTIES**

4. On January 31, 2025 (the "Petition Date"), the Plaintiff commenced the above-styled Chapter 11 proceeding (the "Case") by filing a voluntary petition under Chapter 11 of Title 11 of the United States Code. The Plaintiff continues in possession of its assets as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. The Plaintiff is the debtor and debtor-in-possession in the Case.

5. Upon information and belief, Safe Harbor is a Florida limited liability company and is otherwise *sui juris.*

6. Upon information and belief, Safe Harbor LP is a Delaware limited partnership and is otherwise *sui juris.*

7. On April 11, 2024, Safe Harbor LP filed a proof of claim in the Case in the amount of $11,593,012.04, which was designated Claim No. 5 by the Clerk of the Court (the "Claim").

**GENERAL ALLEGATIONS**

*A.    Organization, Management, and Ownership of Plaintiff*

8. The Plaintiff is a Florida limited liability company. Articles of organization were filed on October 27, 2020.

2

9.      The Plaintiff is owned as follows: (a) 99% by CEO Contract ("CEO Contract"), and (b) 1% by Cagatay Emre Ozkan ("Emre"). CEO Contract is owned and managed by Emre.

10.     The Plaintiff is "manager-managed" by CEO ID Management, LLC ("CEO ID"). Emre is the manager of CEO ID.

**B.      Business Operations**

11.     The Plaintiff is the owner of land comprising 37,281 square feet, or .86 acres, located at 16300 NE 19th Avenue, North Miami Beach, Florida 33162 (the "Property"). The Property was acquired in November 2020 for $5,200,000.00.

12.     The Property is designated for the following (collectively, the "Project"): (a) a 20-story, 354-unit luxury multi-family development, totaling 508,674 gross square feet, which will be comprised of 272,254 leaseable square feet; (b) rental units will consist of a variety of studio, one, and two-bedroom units; (c) the first-floor level will consist of commercial space, lobby, amenity rooms, trash room, and mechanical rooms; (d) floors 2 through 6 shall consist of parking, and the remaining floors will consist of residential units; (e) a swimming pool will be located on the 6th floor; and (f) the rooftop will consist of a garden area and amenities.

**C.      Property Status**

13.     Much work has been completed on the Property.

14.     *First*, the Property all entitlements have been approved for the current design and configuration.

15.     *Second*, all design and proposed development has received city and county approval, and the Property is "shovel ready."

16.     *Third*, fences have been placed to surround the Property including graphics.

17.     *Fourth*, Phase I tests have been performed.

18.    The Property is ready for construction.

**D.    *The Loan Transaction***

19.    On or about March 16, 2022, the Plaintiff entered a loan transaction with Defendant, Safe Harbor (the "Loan"). In connection with the Loan Transaction, the Plaintiff executed the following: (a) a Promissory Note (the "Note") in the amount of $8,500,000.00; (b) a Loan Agreement (the "Loan Agreement"); (c) a First Mortgage Assignment of Rents and Security Agreement (the "Mortgage"); and (d) an Assignment of Leases, Rents, and Profits (the "Assignment"). Additionally, a UCC-1 was recorded in Florida against the Plaintiff's personal property described in the UCC-1 financing statement (the "UCC-1").

20.    On or about March 16, 2022, CEO Investment & Development, LLC, a Florida limited liability company ("CEO Investment"), CEO ID Management, LLC, a Florida limited liability company ("CEO Management"), CEO Contract, Inc. ("CEO Contract"), PIM Construction, LLC ("PIM Construction"), PIM Construction Management, LLC ("PIM Management" and, collectively, with CEO Investment, CEO Management, CEO Contract, PIM Construction, and PIM Management, the "Corporate Guarantors") executed conditional guarantees in favor of Defendant Safe Harbor (collectively, the "Corporate Guarantees").

21.    On or about March 16, 2022, Emre (the "Emre Guaranty") and Celal Ozkan (the "Celas Guaranty" and, together with the Emre Guaranty, the "Individual Guaranties" and, collectively with the Corporate Guaranties, the "Guarantees"; Emre and Celal Ozkan are collectively referred to as the "Individual Guarantors" and, together with the Corporate Guarantors, the "Guarantors") executed conditional guarantees in favor Defendant Safe Harbor. The Guarantees, Note, Loan Agreement, Mortgage, Assignment, and UCC-1 are herein collectively referred to as the "Loan Documents."

22.     In accordance with the Guarantees, the Guarantors conditionally guaranteed payment of the Note subject, however, to the occurrence of an "Enforcement Event," which was generally defined as follows: (a) any intentional material misrepresentation or breach of warranty; (b) a final, non-appealable adjudication or admission of (i) fraud, defalcation, or purposeful conversion, (ii) impairment or diminishment of any lien recorded in favor of the Defendants, (iii) any hinder, delay, or preventing of any exercise of the lender's remedies with respect to collateral, or (iv) any intentional misappropriation, diversion, or waste of the lender's collateral; (c) the filing for bankruptcy by the Plaintiff or any Guarantor; or (d) a material change ownership or control of the Plaintiff.

23.     On or about March 18, 2022, Defendant Safe Harbor assigned the Loan Documents to Defendant Safe Harbor LP.  Defendant Safe Harbor reserved the right to service and enforce the Loan and Loan Documents on behalf of Defendant Safe Harbor LP.

24.     In accordance with the Loan Documents, the loan from Safe Harbor to the Plaintiff was for a period of one year subject, however, to two (2) optional six (6) month extensions provided no event of default had occurred.

25.     In further accordance with the Loan Documents, interest-only payments on the Note were due commencing on April 16, 2022, and then on the 1st day of each month thereafter (each, an "Interest Payment"). Finally, Safe Harbor LP was entitled to charge a late fee in connection with any payment not paid within ten (10) days from the due date.

**E.     *Alleged Defaults and "Forbearance Agreement"***

26.     Defendant Safe Harbor alleged that the Plaintiff had defaulted under the Loan Documents by failing to make (collectively, the "Alleged Payment Defaults") (a) the Interest

Payment due on August 1, 2022, which was made by the Plaintiff on August 9, 2022, and (b) the Interest Payment due on January 1, 2023, which was made by the Plaintiff on January 19, 2023.

27.    In February 2023, the Plaintiff attempted to extend the Loan and pay the extension fee, which was rejected by the Defendants due to the Alleged Payment Defaults.

28.    Based on the Defendants refusal to extend the Loan, and being left with no other choice, on or about March 16, 2023, the Plaintiff and the Guarantors entered into and executed the "Settlement and Extension Agreement" (the "Forbearance Agreement") with the Defendants.

29.    In consideration for the Forbearance Agreement, the Plaintiff paid Defendant Safe Harbor LP the amount of $800,000.00 (the "Principal Reduction Payment"), which reduced the principal balance of the Note to $7,700,000.00 (the "Reduced Principal Balance"). Additionally, the Plaintiff and the Guarantors were required to pay an "extension fee" equal to two percent (2%) of the original loan amount ($8,500,000.00), or $170,000.00, as opposed to the Reduced Principal Amount. In accordance with the Forbearance Agreement, the maturity date of the Loan was extended to March 15, 2024.

30.    The Forbearance Agreement also included many onerous provisions relating to bankruptcy, including, without limitation, an acknowledgement that (a) the Plaintiff is a "single asset real estate company," and (b) the Defendants shall have the "right" to seek (i) "consensual" relief from Stay, (ii) termination of the exclusivity period, and (iii) a dismissal of the case, and that neither the Plaintiff nor the Guarantors shall object to such relief.

31.    The Plaintiff continued to make monthly payments to the Defendants until March 2024.  When the Plaintiff requested a payoff amount, the Defendants provided a payoff which included *retroactive* default rate interest. The Defendants alleged the Plaintiff defaulted under the

6

Forbearance Agreement by failing to timely pay property taxes for 2022, due on or before March 31, 2023, even though the property taxes were subsequently paid by the Plaintiff.

32.     The Plaintiff disputed the payoff amount.

*F.     State Court Litigation*

33.     On April 24, 2024, the Plaintiff filed a three (3) count complaint against the Defendants with the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "State Court"), Case No. 2024-007485-CA-01 (the "State Court Litigation"). The Plaintiff sought relief based on usury, breach of contract, and fraud in the inducement.

34.     On June 5, 2024, the Plaintiff filed an amended complaint in order to include additional and substantial factual allegations not included in the original complaint (the "Amended Complaint").    Thereafter, the Defendants filed an amended answer, affirmative defenses, and counterclaim (the "Counterclaim").

35.     In the Counterclaim, the Defendants sued the Plaintiff and Guarantors for (a) breach of contract – against  the Plaintiff and Guarantors, (b) foreclosure of the Property – against the Plaintiff and Guarantors, (c) foreclosure of personal property – against the Plaintiff and Guarantors, (d) transfer of rents – against the Plaintiff and Guarantors, (e) breach of the Note – against the Plaintiff, and (f) breaches of the Guarantees – against the Guarantors.

36.     The Plaintiff filed a motion for summary judgment on the usury count, and the Defendants filed a cross-motion for summary judgment on the same count. The Defendants filed a separate *ex-parte* motion for final judgment, which was later amended and supplemented to eliminate the *ex-parte* request after the State Court expressed that it would not entertain the request for final judgment.

37.    A hearing on the Defendants' request for final judgment, together with the hearings on the pending motion and cross-motion for summary judgment, were scheduled for February 3, 2025. However, the Defendants subsequently withdrew, without prejudice, their cross-motion for summary judgment, as the court in the State Court Litigation had indicated that the court would only entertain the Defendants' request for final judgment if there was time on February 3, 2025.

38.    On January 29, 2025, the presiding judge in the State Court Litigation unexpectedly recused himself from the State Court Litigation.

### G.    The Usury Claim

39.    Despite the Principal Reduction Payment in March 2023, the Defendants provided several "payoff" letters to the Plaintiff, the last of which asserted a payoff in the amount of $10,256,257.58 through June 30, 2024.

40.    When considering the paid interest, the interest alleged in the payoff letter, the "extension fee" paid by the Plaintiff, and other amounts charged, the Plaintiff asserts that the Defendants violated Florida law by charging interest exceeding twenty five percent (25%). This assertion is supported by the Plaintiff's forensic accountant at Berkowitz Dick Pollack.

### H.    Property and Project Values

41.    The Property has been appraised at $18,000,000.00, which is well above even the disputed amount claimed by Safe Harbor.

42.    The completed Project has been appraised as having a projected stabilized value in the amount of $161,000,000.00, with projected equity of approximately $26,000,000.00.

43.    Accordingly, if the Plaintiff sells the Property, the proceeds should be sufficient to satisfy all debt and provide a substantial return to equity.

**I.      *Events Leading to Bankruptcy***

44.      The Plaintiff was justly concerned over the effects that a potential final judgment against Emry and CEO Contract and the Plaintiff's reorganization efforts, including the ability to either secure new financing or sell the Property.

45.      A trial in the State Court Litigation was scheduled for June 2024 and, therefore, the Plaintiff was concerned over the mounting litigation costs.

46.      Additionally, the Defendant Safe Harbor LP is not the Debtor's only creditor, as the Plaintiff is also indebted to unsecured creditors holding claims in the amount of approximately $1,150,000.00.

47.      Finally, the Plaintiff does not believe the Guarantees are enforceable, since no Enforcement Event has occurred.

**EVENTS DURING BANKRUPTCY**

48.      From the outset of the Case, the Plaintiff disclosed that it had been engaged in discussions regarding financing, the proceeds of which would be sufficient to satisfy the Safe Harbor Loan.

49.      Nevertheless, the Plaintiff was fully transparent and expressed that it was prepared to sell the Property in the event it was unable to secure financing in the near future.

**A.      *Sale of Property***

50.      On April 29, 2025, less than ninety (90) days following the Petition Date, the Debtor filed its *Motion for the Entry of Orders (I)) Approving (A) Bid Procedures; (B) Form of Asset Purchase Agreement; (C) Form and Manner of Notice; and (D) Scheduling Final Sale Hearing; and (III) (A) Authorizing the Sale of Debtor's Assets Free and Clear of Claims, Liens, Interests, and Encumbrances; (B) Approving Asset Purchase Agreement; and (C) Granting Any*

*Related Relief* [ECF No. 32] (the "Sale Motion").  In accordance with the Sale Motion, the Plaintiff seeks authority to sell the Property.

51.    The Debtor also filed the *Ex-Parte Motion for the Entry of Order Shortening Notice of Hearing on Preliminary Relief Requested in the Debtor's Motion for Orders (I) Approving (A) Bid Procedures; (B) Form of Asset Purchase Agreement; and (C) Form and Manner of Sale Notice; (II) Scheduling Auction and Final Sale Hearing; and (III) (A) Authorizing the Sale of Debtor's Assets Free and Clear of Claims, Liens, Interests, and Encumbrances; (B) Approving Asset Purchase Agreement and any Ancillary Agreements; and (C) Granting any Related Relief* [ECF No. 34], which was granted by the Court's *Order Granting Debtor's Ex-Parte Motion for the Entry of Order Shortening Notice of Hearing on Preliminary Relief Requested in the Debtor's Motion for Orders (I) Approving (A) Bid Procedures; (B) Form of Asset Purchase Agreement; and (C) Form and Manner of Sale Notice; (II) Scheduling Auction and Final Sale Hearing; and (III) (A) Authorizing the Sale of Debtor's Assets Free and Clear of Claims, Liens, Interests, and Encumbrances; (B) Approving Asset Purchase Agreement and any Ancillary Agreements; and (C) Granting any Related Relief* [ECF No. 36].

52.    Additionally, the Debtor filed the *Ex-Parte Application for Entry of Order Authorizing Employment of Hilco Real Estate, LLC as Real Estate Consultant and Advisor* [ECF No. 33] (the "Hilco Application"), in which the Debtor requests authorization to hire Hilco Real Estate, LLC, as the Debtor's broker, advisor, and consultant in connection with the marketing and sale of the Property.

53.    A preliminary hearing (the "Preliminary Hearing") on the Sale Motion, as well as the hearing on the Hilco Application, are scheduled for May 9, 2025, at 11:30 a.m.

### B.      *Plan of Reorganization*

54.     On April 30, 2025, the Plaintiff filed the *Plan of Reorganization* [ECF No. 38] (the "Plan") and *Disclosure Statement for Debtor's Plan of Reorganization* [ECF No. 39] (the "Disclosure Statement").

55.     A hearing on the Disclosure Statement is scheduled for June 18, 2025, at 10:30 a.m.

### STATE COURT LITIGATION – RENEWED EFFORTS

56.     On May 6, 2025, the Defendants filed their *Motion for Final Judgment and/or Summary Judgment Against Guarantors for Breach of Settlement Agreement* (the "Renewed Motion") in the State Court Litigation.

57.     In the Renewed Motion, the Defendants seek final judgment on *all counts of the Counterclaim* against *all* Guarantors, including, without limitation, CEO Contract and Emre, the Plaintiff's owners, and CEO ID, the manager of the Plaintiff.

58.     The Renewed Motion was filed ninety-five (95) days *after* the Petition Date and *after* the filing of the Sale Motion, Plan and Disclosure Statement, and three (3) days prior to the Preliminary Hearing.

### COUNT 1
#### (*Injunctive Relief - Section 105*)

59.     The Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 58 of this Complaint as though set forth fully herein.

60.     The Plaintiff seeks a temporary restraining order and preliminary injunction against the Defendants, thus enjoining the Defendants from continuing with the State Court Litigation against the Guarantors, including Emre and CEO Contract.

11

61.     In the event the Defendants obtained a final judgment against Emre and CEO Contract, the Defendants could enforce the judgment and possibly execute upon the membership interests held by Emre and CEO Contract in the Plaintiff. In turn, the Defendants could then dismiss the bankruptcy and then seek to enforce rights against the Property to the detriment of the Plaintiff, unsecured creditors, and equity.

62.     The Defendants waited ninety-five (95) days after the Petition Date to file the Renewed Motion – nearly on the eve of the Preliminary Hearing.

63.     The Plaintiff has a substantial likelihood of succeeding on the merits, as Plaintiff has a reasonable likelihood of a successful resolution to the Chapter 11 case, which is more likely if injunctive relief is issued. Either the Plaintiff will obtain new financing, or the Property will be sold. Under either scenario, proceeds are projected to be sufficient to satisfy all existing debt and provide a return to equity. Moreover, the Plaintiff preserves the right of the Defendants to credit bid the *allowed* amount of their claim.

64.     If injunctive relief is not issued, the Plaintiff will suffer immediate and irreparable harm or injury if the Defendants are permitted to continue with State Court Litigation against Emre and CEO Contract. If a final judgment was obtained, the Defendants could then seek to execute on the membership interests held by Emre and CEO Contract in the Plaintiff, which could then result in a dismissal of the Case and ultimate enforcement against the Property.  This is also tantamount to exercising control over the Property, which is an asset of the Plaintiff's bankruptcy estate, and would also impair the ability of the Plaintiff to reorganize and result in irreparable harm or injury to, and cause immediate adverse economic consequences for, the Plaintiff, its estate, and property of the estate.

65.   Moreover, the mere filing of the Renewed Motion and efforts to obtain a judgment against all Guarantors casts a shadow over the Plaintiff's efforts to sell the Property due to the uncertainty over the disposition of the Property and Case.

66.   Again, the Plaintiff will either obtain new financing or sell the Property, in which case either scenario results in payment in full to creditors, including, without limitation, the Defendants, and provide a substantial return to equity.

67.   The harm to the Plaintiff is significant in the absence of an injunction, while the harm to the Defendants is minimal. Absent injunctive relief, the Plaintiff stands to lose the Property, which, again, would have a severe detriment on the Debtor's reorganization efforts and result in nonpayment to unsecured creditors and distributions to equity. Regardless of whether the Plaintiffs obtain new financing or sell the Property, the Defendants will be paid in full. Moreover, the sale process will likely be completed within sixty (60) to ninety (90) days.  The Plaintiff is not attempting to restructure the Defendants' debtor over a period of years; rather, the Plaintiff – only ninety (90) days into the Case – filed the Sale Motion and Hilco Application, all in an effort to pay creditors in full.

68.   Finally, the public interest will be served by issuing injunctive relief, as a successful reorganization will benefit creditors. At a minimum, the sale process will be completed, including the right of the Defendants to credit bid the allowed amount of Claim 5.

69.   For the reasons stated herein, the balancing of harms and equities weigh in favor the Plaintiffs, and the public interest is served in the event the Plaintiff successfully reorganizes for the benefit of all creditors of the estate.

**WHEREFORE,** the Plaintiff respectfully requests that the Court find in its favor on Count 1 of this adversary complaint, and issue temporary, preliminary, and, if appropriate,

permanent injunctive relief, thus enjoining the Defendants from continuing with the State Court Litigation, including against Emre and CEO Contract, as well as granting any other and further relief that the Court may deem just and proper.

## COUNT 2
### (*Extension of Automatic Stay*)

70.    The Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 69 of this Complaint, as though set forth fully herein.

71.    As of the Petition Date, an automatic stay is in effect pursuant to 11 U.S.C. § 362(a) (the "Stay").

72.    The Stay prevents certain acts against the Plaintiff or property of the Plaintiff's bankruptcy estate, including (a) the commencement or continuation of any action, (b) the enforcement of any claim, against the Plaintiff or its assets, including, without limitation, the Property, and (c) any acts to exercise control over property of the estate.

73.    While the Stay does not ordinarily prevent any action against parties who may be liable with a debtor on account of any claim or with respect to assets that are not property of the estate, the Court has authority to extend the Stay to third parties.

74.    Any action by the Defendants to enforce an adverse judgment obtained in the State Court Litigation, with the intention of controlling the ownership interest of CEO Contract and Emre in the Plaintiff, is tantamount to exercising control over property of the estate, since the Defendants could then cause a dismissal of the Case and then proceed against the Property to the detriment of the Plaintiff, unsecured creditors, and equity.

75.    Additionally, the Defendants efforts in filing the Renewed Motion in the State Court Litigation could cast a shadow over the Plaintiff's efforts to sell the Property in the Case due, in part, to uncertainty over the disposition of the Property and Case.

14

76.     The Court may extend the Stay to prevent the foregoing if such actions threaten, thwart, or frustrate the Plaintiff's reorganization efforts, including efforts to sell the Property for the benefit of all creditors.

77.     If the Stay is not extended as requested, the Defendants' resulting actions could have an immediate adverse economic consequence on the Plaintiff's bankruptcy estate.

78.     Accordingly, the Stay should be extended to stay the State Court Litigation.

**WHEREFORE,** the Plaintiff respectfully requests that the Court find in its favor on Count 2 of the adversary complaint and extend the Stay to stay the State Court Litigation, including, without limitation, preventing Defendants from proceeding against Emre and CEO Contract and from taking any adverse action against the membership interests held by CEO Contract and Emre in the Plaintiff, as well as grant any other and further relief that the Court may deem just and proper.

## **RESERVATION OF RIGHTS**

79.     The Plaintiff reserves any and all of their rights, claims, defenses, and objections, and nothing contained herein is intended or should be construed as a waiver of any such rights, claims, defenses, and objections.

**DATED:** May 7, 2025

/s/Michael D. Seese
Michael D. Seese, Esq.
Florida Bar No. 997323
Seese, P.A.
101 NE 3rd Avenue
Suite 1500
Ft. Lauderdale, Florida 33301
Telephone:  954-745-5897
mseese@seeselaw.com

*Counsel for the Plaintiff*

16

**VERIFICATION**

I, Celal Ozkan, state as follows:

1.     I am an adult individual having a place of business at 3370 NE 163rd Street, Suite 412, Miami, FL 33180.

2.     I am a designated responsible party authorized to act on behalf of the Debtor/Plaintiff in the above-styled Chapter 11 bankruptcy proceedings pending on behalf of Sky Gardens Residences, LLC.

3.     I have reviewed and have personal knowledge of the factual allegations contained in this Complaint, all of which are true and correct to the best of my knowledge, information, and belief.

4.     If called to testify in any proceeding involving this Complaint, I would testify in support of the factual allegations contained in the Complaint.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_Celal Ozkan_

_____
Celal Ozkan

17

**VERIFICATION**

I, Cagatay Emre Ozkan, state as follows:

1.     I am an adult individual having a place of business at 3370 NE 163rd Street, Suite 412, Miami, FL 33180.

2.     I am a designated responsible party authorized to act on behalf of the Debtor/Plaintiff in the above-styled Chapter 11 bankruptcy proceedings pending on behalf of Sky Gardens Residences, LLC.

3.     I have reviewed and have personal knowledge of the factual allegations contained in the Complaint, all of which are true and correct to the best of my knowledge, information, and belief.

4.     If called to testify in any hearing involving the Complaint, I would testify in support of the factual allegations contained in the Complaint.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Cagatay Emre Ozkan

18